UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-1726(DSD/JJK)

Marlin O. Osthus, Regional
Director of the Eighteenth
Region of the National Labor
Relations Board, for and on
behalf of the NATIONAL LABOR
RELATIONS BOARD,

        Petitioner,

  v.                                **ORDER**

Vincent/Metro Trucking, LLC,

        Respondent.

    This matter came on for hearing on August 14, 2009, upon the verified petition of Marlin O. Osthus ("Petitioner"), Regional Director for the Eighteenth Region of the National Labor Relations Board ("Board"), for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act ("Act"), 29 U.S.C. § 160(j). Plaintiff and defendant appeared through counsel. Based upon a review of the file, record and proceedings herein, and the arguments of counsel at the hearing, the court makes the following findings of fact and conclusions of law, and grants plaintiff's motion.

## FINDINGS OF FACT

1.   Jurisdiction of this proceeding is conferred upon this Court by Section 10(j) of the Act (29 U.S.C. Sec. 160(j)).

3.   Respondent, a limited liability corporation with an office and place of business in Minneapolis, Minnesota, has operated, at all times material herein, a food distribution business and has been engaged in this judicial district in the delivery of food and other goods to restaurants.

4.(a)   On December 19, 2008, United Food and Commercial Workers Local 789 ("Union"), pursuant to the Act, filed a charge with the Board in Case 18-CA-18935 alleging in relevant part that Vincent/ Metro Trucking, LLC ("Respondent") has engaged in, and is engaging in, unfair labor practices within the meaning of the Act. Specifically, the charge alleged in substance that Respondent unlawfully refused to implement and honor a collective bargaining agreement reached on about November 30, 2008; unlawfully withdrew recognition from the Union after entering into a settlement agreement whereby it agreed to recognize and bargain with the Union for a period of time and that time that had not yet elapsed, and after reaching a collective bargaining agreement; unlawfully

solicited employees' signatures on documents indicating
they did not wish to be represented by the Union; and
unlawfully refused to provide requested relevant
information in violation of Section 8(a)(1) and (5) of the
Act. (A.R. Ex. 1(a).)

(b) On February 11, 2009, the Union filed a first
amended charge in Case 18-CA-18935 alleging, in addition to
the above, that Respondent bypassed the Union and dealt
directly with employees in about February 2009. (A.R. Ex.
1(c).)

5.(a) On March 13, 2009, following a field
investigation, during which all parties had an opportunity
to submit evidence, the General Counsel of the Board, on
behalf of the Board, by the Petitioner, issued Complaint
and Notice of Hearing, pursuant to Section 10(b) of the
Act, 29 U.S.C. Sec. 160(b), alleging that Respondent had
engaged in, and is engaging in, unfair labor practices
within the meaning of Section 8(a)(1) and (5) of the Act.
(A.R. Ex. 1(h).)

(b) On May 7, 2009, an evidentiary hearing was held
before Administrative Law Judge ("ALJ") Bruce Rosenstein on
the charge, as amended, and on the complaint that issued on
March 13, 2009.

(c)   On June 25, 2009, the ALJ issued a decision and recommended order sustaining the violations alleged in the Petition.   The order is appealable to the Board and no force or effect absent further action by the Board.

6.   On the basis of the record in the underlying administrative hearing, Petitioner now asserts that there is reasonable cause to believe the allegations set forth in paragraphs 7 through 18 below:

7. (a)   Based on its operations during the 2008 calendar year, Respondent transported goods valued in excess of $50,000 from its Minneapolis, Minnesota facility directly to other enterprises located outside the State of Minnesota.

(b)   At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act.

8.   At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act.

9.   At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

Weizhen Lin      -Owner/ Manager of Vincent

Weiyi Lin        -Owner/ Manager of Metro

10.    Since  about  December  11,  2008,  Respondent  has interfered  with,  restrained  and  coerced  employees  in  the exercise  of  their  Section  7  rights  by  engaging  in  the following acts and conduct:

(a)   On about December  11,  2008,  Respondent,  by  its Owner/  Manager  Weiyi  Lin,  at  Respondent's  Minneapolis, Minnesota  facility,  solicited  various  individual  Unit employees to sign a document indicating that the employees no longer wished to be represented by the Union.

(b)  On about December  12,  2008,  Respondent,  by its by its Owner/ Manager Weiyi Lin, at Respondent's Minneapolis, Minnesota  facility,  solicited  a  Unit  employee  to  sign  a document  indicating  that  the  employee  no  longer  wished  to be represented by the Union.

11.    The  following  employees  of  Respondent,  herein called the "Unit," constitute a unit appropriate for the purposes  of  collective  bargaining  within  the  meaning  of Section 9(b) of the Act:

> Respondent's  regularly  scheduled  full  and  part-
> time  drivers  excluding  office  clerical  employees,
> guards  and  supervisory  employees  as  defined  by
> the National Labor Relations Act, as amended.

12.   On August 27, 2007, the Union was certified as the exclusive collective-bargaining representative of the Unit in Case 18-RC-17516.

13.   At all times since August 27, 2007, based on Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of the Unit.

14.   At all material times, the Union has requested that Respondent recognize it as the exclusive collective-bargaining representative of the Unit and bargain collectively with the Union as the exclusive collective-bargaining representative of the Unit.

15.(a)   On about April 3, 2008, the Regional Director of Region Eighteen of the National Labor Relations Board approved a Board Settlement Agreement in Cases 18-CA-18503, 18-CA-18552, and 18-CA-18616.

(b)   By the terms of the Agreement described in subparagraph (a), Respondent agreed to recognize and bargain in good faith with the Union on behalf of all Unit employees for at least 12 months from the date of approval of the Agreement, unless a contract or bargaining impasse was reached during the 12 months.

16.(a)   On about August 7, 2008, the Union by email requested that Respondent furnish it with updated phone and fax numbers for Respondent's Minneapolis facility.

(b)   On about September 5, 2008, the Union orally requested that Respondent furnish it with Unit employees' work schedules.

(c)   On about November 11, 2008, the Union by email requested that Respondent furnish it with the contact information for new drivers and an updated employee list with contact information.

(d)   The information requested by the Union as described above in subparagraphs (a), (b), and (c) is necessary for and relevant to the Union's performance of its duties as the exclusive collective-bargaining representative of the Unit.

(e)   Since about August 7, 2008, Respondent has failed and refused to furnish the Union with the information described above in subparagraph (a).

(f)   Since about September 5, 2008, Respondent has failed and refused to furnish the Union with the information described above in subparagraph (b).

(g)   Since about November 11, 2008, Respondent has failed and refused to furnish the Union with the information described above in subparagraph (c).

17.   On or about December 12, 2008, Respondent withdrew its recognition of the Union as the exclusive collective-bargaining representative of the Unit.

18.   In about late February 2009, in a meeting with some Unit employees held at Respondent's Minneapolis, Minnesota facility, Respondent, by its Owner/ Manager Weizhen Lin and by an unnamed agent, bypassed the Union and dealt directly with the Unit employees by asking employees if they wanted to be paid hourly or monthly.

19.   By the conduct described above in paragraphs 10 and 16 through 18, Respondent has interfered with, restrained, and coerced employees in the exercise of rights guaranteed by Section 7 of the Act, in violation of Section 8(a)(1) of the Act.

20.   By the conduct described above in paragraphs 16 through 18, Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective-bargaining representative of its employees within the meaning of Section 8(d) of the Act, in violation of Section 8(a)(1) and (5) of the Act.

21.   The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

22.   The unfair labor practices of Respondent described above in paragraphs 10 and 16 through 18 have taken place within this judicial district.

23.   Respondent's unfair labor practices as described above in paragraphs 10 and 16 through 18 have caused, and are continuing to cause, irreparable harm to the employees of Respondent in the exercise of the rights guaranteed them by Section 7 of the Act:

(a)   Interim injunctive relief is warranted to preserve employees' free choice of the Union as their exclusive bargaining representative.   In this regard, Respondent's justification for its withdrawal of recognition of the Union as its employees' collective-bargaining agent is based on its illegal conduct described above in paragraph 10.   Thus, Respondent illegally solicited individual employees to sign a document indicating that they no longer wished to be represented by the Union, and then relied on those documents to withdraw recognition.

(b)   Respondent's withdrawal of recognition threatens to irreparably undermine employee support necessary for effective collective bargaining as employee support will predictably erode as the Union is unable to adequately protect the employees or affect their working conditions through collective bargaining during the period that the case is pending before the Board.

(c)   Respondent's withdrawal of recognition further threatens to irreparably harm the collective bargaining process as the Union is newly certified.

(d)   Unless injunctive relief is immediately obtained, it can fairly be anticipated that employees will permanently and irreversibly lose the benefits of collective bargaining and the exercise of their statutory rights for the entire period required for Board adjudication, a harm which cannot be remedied in due course by the Board.   Meaningful collective bargaining after a final Board decision will be impossible, the Board's final bargaining order will be a nullity, and Respondent will have accomplished its goal of defeating employees' free choice of the Union as their bargaining agent.

(e)   There is no adequate remedy at law for the irreparable harm being caused by Respondent's unfair labor practices as described above.

(f)   Granting the temporary injunctive relief requested by Petitioner will not cause undue hardship to Respondent.   First, there is a strong likelihood that Petitioner will succeed on the merits before the Board as is evidenced by the ALJ's June 25, 2009 decision and recommendation.   Second, the balance of hardships clearly favors granting interim relief.   Absent interim relief, the

employees and Union will suffer the irreparable harms
described above in subparagraphs (a) through (e). In
contrast, Respondent will suffer relatively little harm if
injunctive relief is granted. With regard to the interim
bargaining order, the cost in terms of time and money spent
on collective bargaining is a burden that falls on both
parties and thus does not defeat a request for interim
bargaining order relief. Further, an interim bargaining
order under Section 10(j) lasts only until a final Board
decision and does not compel Respondent to agree to any
specific terms and conditions of employment, other than to
abide by the terms of the parties' agreement. Similarly,
requiring Respondent to fulfill its responsibility to
furnish relevant information to the Union poses no hardship
to Respondent. In this case, provision of the information
regarding Respondent's own phone and fax number, unit
employees' work schedules, and updated employee contact
information can hardly be deemed burdensome as it is
readily available and limited in scope given the small size
of the unit. Finally, the cease and desist provisions will
simply require Respondent to comply with the law.

(h) Granting the injunctive relief requested by
Petitioner serves the public interest by preventing
Respondent from eviscerating the employees' Section 7

rights while the Board's processes are pending. Interim relief will preserve the remedial power of the Board, protect employees' Section 7 rights, and safeguard the collective-bargaining process.

(i)  Upon information and belief, it may be fairly anticipated that unless Respondent's commission of the unfair labor practices described above in paragraphs 10 and 16 through 18 is immediately enjoined and restrained, Respondent will continue to engage in those acts and conduct, or similar acts and conduct, constituting further unfair labor practices.

(j)  Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper and appropriate for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable and immediate injury to such policies, to the public interest, and the employees involved herein, and in accordance with the purposes of Section 10(j) of the Act, that, pending final disposition of the matters presently before the Board, Respondent be enjoined and restrained as herein prayed.

## CONCLUSIONS OF LAW

1.   The evidence establishes that:

(a)   Respondent is engaged in commerce within the meaning of Section 2(6) and (7) of the Act.

(b)   The Union is a labor organization within the meaning of Section 2(5) of the Act.

(c)   Respondent has engaged in unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act.

2.   To preserve the issues for orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein pending before the Board, Respondent, its officers, representatives, agents, servants, employees, and all members and other persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation, or repetition of the acts and conduct set forth above in paragraphs 10 and 16 through 18, acts and conduct in furtherance or support thereof, or in any other manner interfering with, restraining or coercing employees in the exercise of rights guaranteed them by Section 7 of the Act, the commission of which in the future

13

is likely or may be fairly anticipated from Respondent's acts and conduct in the past.

Accordingly, **IT IS HEREBY ORDERED** that Respondent Vincent/Metro Trucking, LLC, its officers, agents, and representatives, are temporarily enjoined from:

(1) Any act or conduct interfering with, restraining, or coercing any of its employees in the exercise of their rights guaranteed under Section 7 of the National Labor Relations Act, as amended;

(2) Failing or refusing in any manner to recognize or bargain collectively and in good faith with the Union as the exclusive collective-bargaining representative of Respondent's regularly scheduled full and part-time drivers excluding office clerical employees, guards and supervisory employees, as defined by the National Labor Relations Act, as amended;

(3) Failing or refusing to furnish the Union with information that is relevant and necessary to its role as the exclusive collective-bargaining representative of the Unit;

(4) Bypassing the Union and dealing directly with employees over terms and conditions of work;

Ordering and directing Respondent to:

(1) Furnish the Union with all of the information it requested, including the updated phone and fax numbers for Respondent's facility, work schedules for unit employees, and contact information for new drivers and an updated employee list with contact information; and furnish the Union with any and all relevant information that may be requested in the future;

(2) Bargain collectively and in good faith with the Union as the exclusive representative of

all regularly scheduled full-time and part-time drivers excluding office clerical employees and guards and supervisors as defined in the National Labor Relations Act, as amended, with respect to rates of pay, wages, hours of employment, and all other terms and conditions of employment.

(3) Post copies of the District Court's opinion and order in English, Spanish, and Mandarin Chinese at its facilities in all places where notices to its employees are normally posted, with translations supplied by the Employer and approved by the Regional Director; maintain these posting during the Board's administrative proceedings free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant to agents of the Board reasonable access to its facilities to monitor compliance with this posting requirement;

(4) Have the District Court's opinion and order read in the presence of all unit employees by a responsible management official, or by a Board agent in the presence of a management official; and read also in Spanish and Mandarin by interpreters supplied by the Respondent and approved by the Regional Director;

(5) Within twenty (20) days of the issuance of the District Court's opinion and order, file with the District Court and serve upon the Regional Director a sworn affidavit from a responsible official describing with specificity the manner in which the Respondent has complied with the terms of the Court's decree.

Dated:   August 14, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court